# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2699

_____

| | | |
|---|---|---|
| Jeffrey D. Carter, | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| St. Louis University, a Missouri | * | Eastern District of Missouri |
| Benevolent Corporation; | * | |
| Donald L. Kaminski, M.D., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:    February 9, 1998

Filed:    February 1, 1999

_____

Before McMILLIAN, WOLLMAN and LOKEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Dr. Jeffrey D. Carter, M.D., appeals from a final order entered in the District Court[1] for the Eastern District of Missouri granting summary judgment in favor of defendants Saint Louis University and Dr. Donald L. Kaminski, M.D., on appellant's claims that defendants discriminated against him on the basis of race in violation of

_____

[1]The Honorable Donald H. Stohr, United States District Judge for the Eastern District of Missouri.

Title VII, 42 U.S.C. § 1981 and state law.  Carter v. Saint Louis University, No. 4:95CV1528-DJS (E.D. Mo. Apr. 3, 1997) (order granting summary judgment). For reversal, appellant argues that the district court erred in holding that he failed to create a factual dispute as to whether defendants' proffered reasons are pretextual or to present evidence sufficient to support a reasonable inference of unlawful discrimination.  For the reasons discussed below, we affirm the judgment of the district court.

Jurisdiction in the district court was asserted under 28 U.S.C. §§ 1331, 1337, 1343(3), and 1367.  The notice of appeal was timely filed under Fed. R. App. P. 4(a), and jurisdiction in the court of appeals is based on 28 U.S.C. § 1291.

The following statement of facts is based in large part on the district court's order.  Appellant was one of four doctors and the only African-American in the 1991 general surgical residency program at Saint Louis University Medical School.  Dr. Kaminski is Professor of Surgery and the director of the surgical residency program. The surgical residency program lasts five years and residents rotate through different departments at the medical school and several local hospitals.  During each rotation, the resident is supervised and evaluated by medical school faculty and hospital physicians. Dr. Kaminski reviews the evaluations and communicates concerns to residents. Residents can be placed on probation for unsatisfactory academic or clinical performance, and residents are also expected to score in the 25th percentile or better on annual standardized in-service examinations administered by the American Board of Surgery (ABSITE exams).  Residents who fail to meet these standards may be dismissed.

During his first year, appellant received mixed clinical evaluations (six of sixteen evaluations rated his performance as less than satisfactory) and he scored in the 9th percentile on the ABSITE exam.  During his rotation at one local hospital, appellant alleged that a chief resident physician made racially offensive remarks about him and

patients. This physician was not a medical school faculty member and did not evaluate appellant for the surgical residency program. Dr. Kaminski cautioned appellant that his low ABSITE exam score and clinical performance could result in his termination from the program and gave him suggestions for improvement.

During his second year, appellant also received mixed clinical evaluations, and the surgical faculty concluded appellant's clinical performance was unsatisfactory. Dr. Kaminski placed him on probation for three months and removed him from clinical duties. Appellant conducted laboratory research, presented his research work at a major medical conference and wrote an article which was later published in a medical journal. Appellant scored in the 29th percentile on the ABSITE exam.

Appellant returned to clinical rotations and began his third year with generally favorable evaluations during his first rotation; two evaluations noted that his performance was much improved. However, during his second rotation, two supervising physicians evaluated his knowledge and clinical performance as "below average." The surgical faculty concluded that appellant should not continue in the program. However, Dr. Kaminski stated that, pursuant to medical school policy, appellant had to be placed on probation before he could be terminated from the program, there would be a stronger basis for termination if appellant did not score in the 25th percentile on the upcoming ABSITE exam, and his performance on probation should be thoroughly documented. The surgical faculty agreed with Dr. Kaminski's recommendation to place appellant on probation. Appellant alleged that this is evidence that in fact he was terminated from the program at this time (December 1993), his second probation was a sham, and the surgical faculty had decided to manufacture a paper trail to support the decision to terminate him.

In January 1994 Dr. Kaminski notified appellant that he was again on probation. Also in January 1994 Dr. Kaminski performed two operations with appellant's assistance. Dr. Kaminski concluded that appellant lacked an understanding of certain

basic surgical concepts and that his performance was below that expected of a third-year surgical resident. Two surgical faculty members criticized appellant's clinical performance. Appellant alleged that he was assigned significantly more on-call or overnight duty assignments than other residents, which made it very difficult for him to prepare for the ABSITE exam, and that, as a result, he scored in the 9th percentile.

In March 1994 Dr. Kaminski terminated appellant from the program for poor performance.

In August 1995 appellant filed this action against defendants, alleging that during his employment as a surgical resident defendants discriminated against him and terminated him from the program on the basis of race in violation of Title VII, 42 U.S.C. § 1981 and state law. Defendants filed motions to dismiss. The district court dismissed the Title VII and state law claims against Dr. Kaminski individually but not the § 1981 claim and then granted summary judgment in favor of defendants on the remaining claims. The district court deemed that, for purposes of the motion for summary judgment, appellant established a prima facie case of race discrimination, slip op. at 5, and found that defendants articulated legitimate, nondiscriminatory reasons for their actions, that is, poor ABSITE exam scores and various evaluations indicating unsatisfactory clinical performance. Id. The district court then found that appellant's evidence failed to create a factual dispute as to pretext or to support a reasonable inference of unlawful discrimination. Id. at 16. The district court specifically rejected appellant's arguments about the subjective nature of the evaluations, procedural irregularities, and statistical evidence concerning the university's historical record for training and employment of African-American surgeons. Id. at 8-15. This appeal followed.

For reversal, appellant argues that the district court erred in granting summary judgment in favor of defendants because the evidence was sufficient to create a fact issue on pretext and to support a reasonable inference of unlawful discrimination.

Appellant challenges defendants' reliance on his low ABSITE exam scores because defendants decided to terminate him on the basis of his first and second scores and the second-year score was satisfactory (29th percentile). Appellant also challenges defendants' reliance on the evaluations. He argues that his evaluations were in fact mixed, that is, he received what he describes as mostly satisfactory to exceptional evaluations, although admittedly some were less than average. Appellant also argues that there was statistical and anecdotal evidence showing racial discrimination, amounting to a racially hostile work environment, in the administration of the surgical residency program.

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or the allegations in the pleadings; rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit. See, e.g., Ghane v. West, 148 F.3d 979, 981 (8th Cir. 1998); Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1331 (8th Cir. 1996).

Because appellant's discrimination claim is based on inferences to be drawn from circumstantial evidence, it is governed by the familiar burden-shifting analysis set

forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The plaintiff must first establish a prima facie case of discrimination, which has the effect of creating a legal presumption of unlawful discrimination; the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the employer meets this burden, the presumption created by the prima facie case is rebutted and drops from the case. The burden of production then shifts back to the plaintiff to show that the proffered reason was a pretext for unlawful discrimination. This is really a two-part showing-- the plaintiff must show that the employer's proffered reason is pretextual and that the employer discriminated against the plaintiff. In this circuit, a discrimination "plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision." Rothmeier v. Investment Advisers, Inc., 85 F.3d at 1336-37 (noting additional evidence may not be necessary); see Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998); Ghane v. West, 148 F.3d at 981. The ultimate question of law remains whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff. Rothmeier v. Investment Advisers, Inc., 85 F.3d at 1336-37.

Appellant made serious charges against defendants and we do not reach our decision lightly. We hold that appellant failed to create a genuine issue of material fact as to whether defendants' proffered reasons for terminating him from the surgical residency program were pretexts for racial discrimination. The record shows that two of appellant's ABSITE exam scores were below the level defendants considered to be satisfactory (25th percentile). It is not disputed that appellant scored in the 9th, 29th and 9th percentile on his first, second and third ABSITE exams. According to the record, defendants placed appellant on probation in January 1994 and terminated him from the program in March 1994. See slip op. at 6. The record does not support appellant's argument that defendants effectively terminated him from the program in

December 1993 and therefore could not have considered his third (and admittedly low) score in deciding whether to terminate him (the score was reported during January-March 1994). Even assuming the termination decision had been made in December 1993 and then deferred to March 1994, the delay was arguably to appellant's advantage because it gave him an additional opportunity to demonstrate improvement. In any event, defendants also relied upon the evaluations of appellant's clinical performance during his first two years.

It is also undisputed that appellant received unsatisfactory evaluations of his clinical performance. It is true that he also received satisfactory to exceptional evaluations. Appellant's argument that the evaluations were "at best subjective" does not establish that the unsatisfactory evaluations were the result of discriminatory animus. The present case is not one in which the plaintiff has produced evidence indicating that the employer's proffered reasons were false, carelessly inaccurate or willfully exaggerated. See, e.g., Young v. Warner-Jenkinson Co., 152 F.3d at 1023-24 (employer offered different explanations and evidence that would allow reasonable trier of fact to disbelieve each explanation).

Appellant also argues the district court erred in rejecting his claim of a racially hostile work environment. Assuming for purposes of analysis that appellant raised a racially hostile work environment claim in the district court, we agree with the district court that the statistical evidence was incomplete and inconclusive and did not involve similarly situated persons and that the anecdotal evidence was conclusory. See slip op. at 13-15. In particular, we note that, with respect to the racially offensive remarks allegedly made by a chief resident, such evidence did not raise a genuine issue of material fact because that individual did not evaluate appellant's clinical performance and was not involved in the decision-making process. See Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1105-06 (8th Cir. 1996).

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.