# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1725

_____

Ronell Williams,                    *
                                    *
            Appellant,              *
                                    *   Appeal from the United States
    v.                              *   District Court for the
                                    *   Eastern District of Missouri
Lindenwood University,              *
                                    *
            Appellee.               *

_____

Submitted:  November 14, 2001

Filed: May 1, 2002   (Corrected: May 6, 2002)

_____

Before McMILLIAN, FAGG and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Ronell Williams ("plaintiff") is a black male who attended Lindenwood University before being expelled for disciplinary violations arising out of a party held in student housing.  Plaintiff appeals from a final order entered in the United States District Court[1] for the Eastern District of Missouri granting summary judgment in favor of Lindenwood University on plaintiff's claims for breach of contract and racial discrimination.  See Williams v. Lindenwood University, No. 4:00CV00010 (E.D.

_____

[1]The parties consented to trial before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), with direct review to this court.

Mo. Feb. 13, 2001) (hereinafter "slip op."). For reversal, plaintiff argues that the district court erred in granting summary judgment in favor of the university because (1) he raised genuine issues of material fact as to whether his expulsion and denial of readmission was based on his race and (2) he produced evidence that the university's proffered explanations for the expulsion and denial of readmission were pretexts for racial discrimination. For the reasons discussed below, we reverse the grant of summary judgment and remand the case to the district court for further proceedings.

Jurisdiction was proper in the district court pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff filed a timely notice of appeal pursuant to Fed. R. App. P. 4(a)(1)(A). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## I. Facts

The facts herein are presented in the light most favorable to plaintiff, as the nonmoving party. See Fed. R. Civ. P. 56(c).

While plaintiff was a student at Lindenwood University, he lived with Chad Moore, who is also black, in a mobile home used by the university for student housing ("the trailer"). Lindenwood University students who live in student housing agree to abide by certain rules, including that alcohol is not allowed on campus ("the alcohol policy"), visitation by members of the opposite sex is prohibited ("the visitation rule"), and that students are responsible for the actions of their guests while on campus.

On February 16, 1999, plaintiff, Moore, two white female students named Kristen Bruening and Stephanee Denbow (together, "the students"), and three unidentified black males who were not students (together, "the nonstudents") participated in a party in the trailer. There was alcohol at the party in violation of the alcohol policy. Denbow's and Bruening's presence in the trailer was a violation of

-2-

the visitation rules.[2] Williams was responsible for the actions of the nonstudents while they were on campus.

Denbow testified in her deposition that she initially went to the trailer that night on her own accord to do laundry, and that Moore and plaintiff were both present when she arrived. Bruening testified in her deposition that she accompanied Denbow to the trailer, and that at approximately 9:00 p.m., both Moore and plaintiff announced to them that other guests would be coming over. Denbow and Bruening decided to wait in the trailer to socialize with Moore, plaintiff, and others who would be arriving later that evening. More than an hour later, the nonstudents arrived at the trailer. Bruening testified that there was already alcohol present before the nonstudents arrived. The uncontroverted testimony of the students at the party was that plaintiff did not ever drink any of the alcohol, while Moore, Denbow,[3] Bruening, and the nonstudents did drink it. The students all testified that the nonstudents did not misbehave or act inappropriately during the party or ever cause anyone to feel unsafe. Moore testified that he did not see anyone in danger at the party and that no one made any sexual or inappropriate remarks. Similarly, Bruening testified that she never felt threatened during the party. Bruening testified that, at different times, both Moore and plaintiff left the party for a little while and returned later. Moore testified that when he returned to the party, he turned on the stereo in his room.

At approximately 2:00 a.m., campus security officer Byron Steele, who is black, and another campus security officer heard noise from the trailer, determined

[2]For the two white students, this was at least their second violation each for violating the visitation policy under similar circumstances. For example, Denbow testified that she had previously been in trouble earlier that same year for unauthorized visits to a male student's trailer.

[3]Because Stephanee Denbow was under twenty-one years old at the time of the party, she violated the law by drinking underage in addition to violating the alcohol policy. Yet, she was readmitted to Lindenwood University while plaintiff was not.

that its occupants were in violation of Lindenwood University's "quiet hours policy," and approached the trailer to confront them. Steele testified in his deposition that when he arrived at the trailer, neither of the women appeared to be in any trouble and no one asked for any help; rather, everyone was "just partying and running around." Steele described the nonstudents' appearance as "pretty nice."

Steele testified that when he and the other campus security officer entered the front of the trailer, he saw Moore and Bruening trying to run out the back door. Breuning admitted that she and Moore went out the back door of the trailer when she saw security coming, and that Steele had to call her at home at 3:00 a.m. to let her know that he was aware she had been present at the party. Moore, too, testified that he left with Bruening when the campus security officers arrived, and said that he found out what happened from plaintiff when he returned to the trailer later, after the campus security officers had left. Plaintiff testified in his deposition that he was cooperative with the campus security officers, answered all of their questions, and told them who the nonstudents were. Steele confirmed that it was plaintiff who spoke with him and that only plaintiff took responsibility for living in the trailer.

At approximately 2:20 a.m., Steele wrote out a three-page behavioral incident report detailing his observations. In the report, Steele did not mention that the nonstudents acted belligerently or violently, or that they did anything to make Steele feel unsafe.

Steele also reported the incident to Joseph Steenbergen, the Lindenwood University Dean of Students. Dean Steenbergen claimed that he learned from Steele that the nonstudents were members of a gang, that they said that they were going to "go through" the campus security officers, and that they were criminals with outstanding arrest warrants. Dean Steenbergen testified that Steele seemed "pretty scared" by the incident, that the nonstudents cursed at Steele, that Steele thought they

were going to fight, and that this was the first time Steele had ever told him anything like that.

After speaking with Steele, Dean Steenbergen expelled the students from the university. Each of the students appealed their expulsion to the Lindenwood University Dean of Admissions, David Williams. Dean Williams heard all of the appeals and met individually with each of the four students while the university investigated the incident. Moore, Bruening, and Denbow were readmitted within days. Plaintiff was denied readmission ostensibly because he created a dangerous situation by bringing criminals and gang members to campus and because he instigated all of the violations of Lindenwood University policy.

Throughout Lindenwood University's investigation of the incident, there arose several instances where (1) university administrators drew conclusions about the incident which were not corroborated by the students, Steele, or the behavioral incident report, and (2) university administrators made remarks about plaintiff and the nonstudents which the students interpreted as racially discriminatory.

## A. Disputed Facts about the Incident

Lindenwood University officials said that Steele identified the nonstudents as gang members because he saw in the trailer a photograph of them in which they appeared to be "throwing gang signs." However, Steele testified that he did not know whether the nonstudents were members of a gang or even if they were "throwing gang signs" in plaintiff's photograph; only that that was "kind of what it looked like." Steele also testified that plaintiff was not in the photograph and, when asked whether the nonstudents were the same individuals that were in the photograph, he answered "I think maybe one of them."

Steele also said that he did not recall plaintiff telling him that the nonstudents had outstanding arrest warrants. Dean Williams testified in his deposition that he found out about the alleged warrants from plaintiff only after plaintiff had already been expelled. However, plaintiff testified that he did not know one way or the other whether the nonstudents had outstanding arrest warrants and that he did not ever say that they did. Moreover, even though plaintiff gave Dean Steenbergen the names of the nonstudents, none of the university administrators were ever able to verify with law enforcement officials that the nonstudents had outstanding arrest warrants.

Another allegation consistently raised by Lindenwood University administrators is that the nonstudents physically threatened the campus security officers and that Steele was visibly shaken when the nonstudents bragged that they would "go through" the campus security officers. However, there is no support for this allegation in the record. Denbow, who was present throughout the entire exchange, said that she did not see or hear the nonstudents threaten or confront the campus security officers. She added that the nonstudents did not act belligerently to the campus security officers, but were rather quite polite to them, and that Steele did not appear to be scared at any point. Plaintiff testified that he did not hear the nonstudents ever say that they were going to "go through" the campus security guards. Even Steele testified that he did not hear the statement about "running through these guys," and assumed that the other campus security officer "apparently" had heard it.[4]

_____

[4]The other campus security officer was not deposed and his testimony was not part of the record.

**B. Racially Discriminatory Remarks**

**1. Dean Williams's comments**

Bruening testified that she twice met with Dean Williams about the incident. Bruening testified that during the first meeting, Dean Williams asked her what she was doing hanging around with "all those black guys" and whether her parents knew that she was hanging around with those black guys. Bruening testified that, at the second meeting, Dean Williams told her she should not have been hanging around with all these black guys.

Similarly, Denbow testified that during her meetings with Dean Williams, he told her she could have gotten raped because she did not know plaintiff's guests, asked her what her father would think of her hanging around with those black guys, and used the term "gang bangers" to describe plaintiff and the nonstudents. Denbow testified that Dean Williams otherwise did not ask anything about the party. Denbow testified that she got the impression from Dean Williams that he wanted to make her feel like it was wrong for her be there with black men, and that he did not think she should be hanging out with any black men, as opposed to the particular people at the party. Denbow testified further that she believed Dean Williams would have been less concerned if everything was the same except that the nonstudents were white. Denbow testified that Dean Williams told her somebody was trying to roll a marijuana joint at the party, but that she did not see that occurring.[5]

---

[5]Steele also testified that no marijuana was found in the trailer. In the days following the incident, Steele apparently told Bruening that Lindenwood University had been trying to "catch" plaintiff for a while and that they had been suspicious of him. Steele told Bruening that she had gotten into a bad situation because plaintiff might have been involved with drugs. Nonetheless, Steele testified in his deposition that he was aware of no evidence that plaintiff had ever actually been involved with drugs.

Plaintiff testified that, when he met with Dean Williams, Dean Williams took only ten minutes to read his letter of appeal before denying it, and that Dean Williams told him that he was not smart enough to attend Lindenwood University.

## 2. President Spellmann's comments

Bruening testified that President Spellmann told her he was concerned about her personality because she was hanging around with those black guys. Denbow testified that she got the impression from President Spellmann that he was saying she was a "floozy" and a whore because she was hanging out with "a bunch of black guys."

## 3. Dean Steenbergen's comments

Denbow testified that, on the way to a meeting with Dean Williams, in the context of explaining to her why the university did not want to readmit plaintiff, Dean Steenbergen told her that plaintiff previously had been caught selling drugs.

Moore testified that Dean Steenbergen told him that he did not care about the party or the girls, only that plaintiff's "brothers" were present. Moore testified that Dean Steenbergen used the term "gang bangers" to describe the nonstudents, and that Dean Steenbergen told him that the nonstudents could "just leave that shit in St. Louis." Moore testified that, when Dean Steenbergen came to the trailer to inform him that he had been readmitted to Lindenwood University but was on probation, Dean Steenbergen accused Moore and plaintiff of possessing stolen property. Dean Steenbergen refused to leave the trailer until he had placed numerous phone calls to independently verify that Moore and plaintiff had not stolen their appliances and other belongings.

Plaintiff testified that he answered every question Dean Steenbergen asked throughout the investigation, including the identities of the nonstudents and students present at the party. Dean Steenbergen admits that plaintiff identified the nonstudents, but said that plaintiff's cooperation did not change Lindenwood University's decision to expel and not readmit plaintiff.

On January 4, 2000, plaintiff filed this action against Lindenwood University in the United States District Court for the Eastern District of Missouri alleging violations of 42 U.S.C. § 1981. On February 13, 2001, the district court granted summary judgment in favor of Lindenwood University, holding that there were no genuine issues of material fact and that Lindenwood University was entitled to judgment as a matter of law because plaintiff failed to set forth a *prima facie* case of racial discrimination. See slip op. at 9 (stating that plaintiff offered no evidence of intentional discrimination and no evidence that Lindenwood University's actions were pretext for discrimination). This appeal followed.

## II. Discussion

We review *de novo* a district court's decision to grant summary judgment. See Scroggins v. University of Minn., 221 F.3d 1042, 1044 (8th Cir. 2000). Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists. See Fed. R. Civ. P. 56. The moving party bears the burden of proving that the material facts are undisputed. See Mems v. City of St. Paul, 224 F.3d 735, 738 (8th Cir. 2000). "[T]he evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in the light most favorable to that party." Raddatz v. Standard Register Co., 31 F. Supp. 2d 1155, 1157 (D. Minn. 1999). The nonmoving party "may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" Id. The drawing of reasonable inferences from the facts is a function reserved

for the fact finder.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (explaining that district court should not weigh evidence or attempt to determine truth of matter on motion for summary judgment).

The purpose of 42 U.S.C. § 1981 is to prohibit discrimination in the "performance, modification and termination of contracts" and to protect "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Because plaintiff's discrimination claim is "based on inferences to be drawn from circumstantial evidence, it is governed by the familiar burden-shifting analysis."  Carter v. St. Louis Univ., 167 F.3d 398, 401 (8th Cir. 1999) (Carter). To establish a *prima facie* claim of racial discrimination under 42 U.S.C. § 1981, the plaintiff must show that (1) he is a member of a racial minority, (2) the defendant intended to discriminate against him on the basis of race, and (3) the discrimination concerned an area enumerated by the statute. See Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  Once the plaintiff establishes a *prima facie* case of racial discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions to rebut the presumption of discrimination.  See Carter, 167 F.3d at 401.  Then, the plaintiff must demonstrate that the defendant's proffered reason was a pretext for unlawful discrimination.  See id. The "ultimate question of law [is] whether the evidence is sufficient to create a genuine issue of fact as to whether the defendant intentionally discriminated against the plaintiff."  Id., citing Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).  We hold that the district court erred in granting summary judgment because the evidence is sufficient to create genuine issues of material fact with respect to plaintiff's *prima facie* case and the issue of pretext.

**A. 42 U.S.C. § 1981 Prima Facie Case**

**1. First Element of *prima facie* case**

The first element of the *prima facie* claim of racial discrimination undisputably is met because plaintiff, a black male, is a member of a racial minority.

**2. Second Element of *prima facie* case**

Plaintiff alleged that Lindenwood University intentionally expelled him and then refused to readmit him because of his race. In support of this allegation, plaintiff offered several specific examples of Lindenwood University officials emphasizing the race of plaintiff and the nonstudents and showing a discriminatory attitude about that race in the context of the investigation that led to the university's decisions to expel and not readmit plaintiff. See Browning v. President Riverboat Casino-MO, 139 F.3d 631, 635 (8th Cir. 1998) (explaining that evidence of conduct or statements reflecting discriminatory attitude is sufficient to show that discriminatory attitude was motivating factor in decision); see also Beshears v. Asbill, 930 F.2d 1348, 1254 (8th Cir. 1991) (same).

There is a dispute as to whether reference was made to "black guys" or to "gang bangers" throughout the investigation. Because the nonmoving party in a motion for summary judgment is entitled to the benefit of all reasonable inferences, we assume for these purposes that such comments were made in the course of the investigation. Consequently, we conclude that the university officials' repeated use of racial terms interchangeably with references to criminality, as well as their accusations that the presence of black people itself created a climate of fear, raises an inference of a discriminatory attitude. Such evidence of a discriminatory attitude is sufficient to establish the second element of plaintiff's prima facie § 1981 case.

The district court erroneously reasoned that the university officials' repeated references to "gang bangers" and "black guys" throughout the investigation were not evidence of discrimination because "[o]ne would have to assume that all 'gang bangers' are African-American in order to infer any racial discriminatory intent by defendant." Slip op. at 6. We disagree. On the contrary, one could infer racially discriminatory intent merely by showing that the *defendant* assumed or implied that all gang bangers are black, because it is the intent and attitude of the defendant that is relevant and not the intent and attitude of the population at large. As previously stated, there is ample evidence from which a reasonable factfinder could conclude that Lindenwood University officials associated the black race with gang affiliation. Similarly, the district court's conclusion that intentional discrimination cannot be established with evidence that the Lindenwood University officials referred to African-Americans as "black guys" also misses the point – injecting racial language at all into the decision-making process creates the inference that race had something to do with the decision-making process. Throughout the investigation, the Lindenwood University officials continued to focus on the race and racial stereotypes of plaintiff and the nonstudents.[6]

Lindenwood University argues on appeal that there is no direct or circumstantial evidence of intent to discriminate against plaintiff because references to words and phrases such as "gang bangers," "rape," and "black guys" during its investigation of the incident were used in connection with the three nonstudents only, and were never used in connection with plaintiff or in a manner exhibiting negative racial connotations. We disagree. Lindenwood University officials interchangeably used race to describe people who allegedly were criminals and whose presence supposedly put the safety of the female students at risk. Race was used in a

_____

[6]The district court also stated that plaintiff's claim of racial discrimination was somehow undermined because Moore was readmitted. However, the fact that Moore was readmitted does not disprove that plaintiff was the victim of racial discrimination and, therefore, does not influence the outcome of this motion for summary judgment.

derogatory manner to the extent that gang-banging, criminality, and dangerousness is derogatory. It does not matter whether the remarks were made in reference to plaintiff or the nonstudents because the remarks reflected the attitude about race of the university officials who decided to expel plaintiff. If the university officials were more concerned with the factors other than race as they claim, they could have referred to the nonstudents as plaintiff's friends, the visitors, the nonstudents, or even "those older guys" or "those guys", or any number of terms that were not suggestive of attitudes about race. Race became an issue when the university kept using race in its investigation, presumably because race encapsulated everything they intended to convey.[7]

Lindenwood University next argues that those statements were at most "stray remarks," which do not constitute evidence of racial discrimination because they are not relevant to the decision-making process. This argument also fails because the remarks were made by university officials while interviewing the witnesses who it claims it consulted to decide whether to readmit plaintiff, and in the context of the investigation of the incident that resulted in plaintiff's expulsion. Therefore, the circumstances in which the remarks were made was indistinguishable from the decision-making process and cannot be said to constitute "stray remarks."

Because there is ample evidence from which to infer that the Lindenwood University officials exhibited a racially discriminatory attitude, we hold that plaintiff

---

[7]Lindenwood University also argues that, because it was Steele who assumed that the nonstudents were gang members and Steele is black, it is "impossible to equate his conclusion . . . with a negative racial bias towards [plaintiff]." However, as Lindenwood University itself points out, the decisions to expel and not readmit plaintiff were made by Lindenwood University based on its own investigation, not by Steele. Furthermore, assuming for the sake of argument that Lindenwood University believed that the nonstudents were in fact gang members, its use of the term "black" as a proxy for "gang member" still reflects a negative attitude about black people.

has established the intentional discrimination element of his *prima facie* case. See Carter v. Chrysler Corp., 173 F.3d 693, 701 (8th Cir. 1999) (explaining that plaintiff need only offer evidence creating inference that racial animus surrounded decision to satisfy intentional discrimination element).

**3. Third Element of *prima facie* case**

Finally, the third element of the *prima facie* case is met because the parties do not dispute that a contract existed between plaintiff and Lindenwood University, and the university's decision to expel and not readmit plaintiff is tantamount to the termination of that contract because it deprived plaintiff of the enjoyment of the "benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

**B. Proffered Non-discriminatory Explanations and Pretext**

Having concluded that plaintiff has met his initial burden of establishing a *prima facie* case of racial discrimination, we turn to the nondiscriminatory explanations articulated by Lindenwood University to justify its actions, and then ask whether plaintiff has raised a genuine issue of material fact that Lindenwood University's proffered explanations are a pretext for unlawful discrimination. Lindenwood University argues that there were "substantial differences in the level of involvement and seriousness of the violations of the different students" which justified expelling and then refusing to readmit plaintiff, including that plaintiff was primarily or solely responsible for (1) instigating the violations of the alcohol policy; (2) instigating the violations of the visitation rule; (3) violating Lindenwood University's respect for campus authority rules; (4) bringing "criminals and possible gang members" onto campus, thereby endangering the other students; and (5) the conduct of those nonstudents, including their physical threats to the campus security officers. Lindenwood University contends that because plaintiff was the primary

-14-

active participant – while the other students were mere passive participants drawn into a situation created by plaintiff – it was entitled to punish plaintiff more severely.

Reviewing the record in its entirety, we find that there is a genuine dispute in the facts presented as to whether plaintiff's conduct was indeed more "active" than that of the other students with respect to each of the factors listed by Lindenwood University. Because plaintiff is entitled to the benefit of all reasonable inferences drawn from the facts, see Fed. R. Civ. P. 56, we conclude that plaintiff has created sufficient doubt as to whether Lindenwood University's proffered explanations are pretextual. Consequently, Lindenwood University is not entitled to judgment as a matter of law.

First, a dispute exists as to whether plaintiff's violation of the alcohol policy was more serious than that of the other students. Lindenwood University contends that plaintiff was responsible for the presence of alcohol because the nonstudents brought it to the trailer. However, the evidence shows that there was alcohol present before the nonstudents arrived and did not show that plaintiff was otherwise responsible for the presence of the alcohol. Moreover, the evidence indicates that plaintiff was the only person at the party who did *not* consume any alcohol. Hence, it cannot be said that plaintiff's conduct with respect to the violation of the alcohol policy was more serious or active than the students who were readmitted.

Second, a dispute exists as to whether plaintiff's violation of the visitation rule was more serious than that of the other students. The evidence is uncontroverted that all four of the students involved were in violation of the visitation rule, and that, at the very least, plaintiff and Moore were equally in violation of the visitation rule because they both lived in the trailer and they both mutually hosted the party. This situation was not one where plaintiff instigated a violation of the visitation rule by inviting female students to the trailer; the female students arrived uninvited and Moore and plaintiff played an equal role in inviting them to stay for the party.

Lindenwood University argues at great length that the fact that Moore left the trailer while the party was going on demonstrates that the party must have been instigated by plaintiff, but the uncontradicted evidence shows that plaintiff also left the party, so in this respect plaintiff's conduct is not distinguishable from that of Moore. Because there is evidence showing that the two white female students initiated the violation of the visitation rule and that plaintiff and Moore were equally responsible for inviting them to stay for the party, it cannot be said that plaintiff's conduct with respect to the violation of the visitation rule was more serious or active than the students who were readmitted.

Third, a dispute exists as to the extent of plaintiff's cooperation with university officials as compared to that of the other students. Because there is evidence showing that plaintiff remained in the trailer and cooperated fully with the campus security officers while some of the other students who were readmitted fled from the campus security officers, and because there is evidence showing that plaintiff provided Dean Steenbergen with all of the information he requested during the investigation, there is a genuine dispute about whether plaintiff was less cooperative than the other students.

Fourth, a dispute exists as to whether plaintiff created a climate of fear on campus because of the presence of the nonstudents. All of the students testified that the nonstudents behaved politely and respectfully at all times, and Steele omitted any allegation to the contrary from his behavioral incident report and his deposition testimony. These omissions on the behavioral incident report tend to corroborate plaintiff's allegation that Lindenwood University used this factor as a pretext for unlawful racial discrimination.

Fifth, a dispute exists as to whether the nonstudents acted dangerously or threatened either the campus security officers or the students. The record indicates that the nonstudents did not touch the campus security officers and that no violence

resulted from the interaction between the nonstudents and the campus security officers. Moreover, no one – including Steele – testified that they heard the nonstudents say that they would "go through" the campus security officers or say or do anything to communicate a violent physical threat.

Additionally, there exists a dispute about whether it was ever Lindenwood University's policy to expel and not readmit students for the same violations plaintiff allegedly committed. Denbow testified that it was commonly known at Lindenwood that people routinely violated the alcohol policy and the visitation rule under similar situations, but that they always were readmitted. For example, Denbow and Bruening previously had been in trouble for visiting with male students. Steele testified that people "always" exit the trailer out the back when security comes. Dean Steenbergen testified that he probably has never expelled anyone for disrespecting authority. President Spellmann also admitted that it is not typical to expel a student for a guests' actions while on campus. Dean Williams declined to answer the question posed as to whether it was typical to expel and not readmit a student for these violations.

Hence, the evidence is sufficient to create genuine issues of material fact as to whether Lindenwood University intentionally discriminated against plaintiff on the basis of race. There is ample evidence to permit a reasonable factfinder to conclude that racial discrimination was a primary reason that plaintiff was expelled and not readmitted and that Lindenwood University's proffered nondiscriminatory explanations were pretextual. Accordingly, the grant of summary judgment must be reversed.

## III. Conclusion

For the aforementioned reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.