# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3919

_____

TRI, Inc.,                                      *
                                                *
    Plaintiff - Appellant,              *
                                                *    Appeal from the United States
v.                                              *    District Court for the
                                                *    District of Minnesota.
Boise Cascade Office Products, Inc.;            *
Honeywell, Inc.,                                *
                                                *
    Defendants - Appellees.             *

_____

Submitted:  October 7, 2002

Filed:  January 8, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Boise Cascade Office Products, Inc. ("Boise") is a nationwide distributor of thousands of office products manufactured by hundreds of vendors. In February 1998, Boise and Honeywell, Inc. entered into a Master Agreement establishing terms and procedures whereby Honeywell offices located throughout the United States and Canada could purchase office products from Boise. The terms of the Agreement included a commitment by Boise "to make a best faith effort to direct a reasonable percentage of business to minority/woman owned businesses."

TRI, Inc., a minority-owned manufacturer of recycled printer toner cartridges, is located in Minneapolis. When Boise entered into the Master Agreement with Honeywell, TRI was supplying recycled toner cartridges to Boise customers in the Twin Cities area and hoped to become one of Boise's national suppliers. In the fall of 1998, Boise's national Minority Business Development Manager introduced TRI to his counterparts at Honeywell as a prospective minority-owned supplier under the Master Agreement. Shortly thereafter, Honeywell advised Boise that Honeywell would not purchase recycled toner cartridges produced by TRI. TRI's sales to other Boise customers declined in the following months.

TRI commenced this action against Honeywell and Boise, alleging a conspiracy to harm TRI and asserting antitrust claims under section 1 of the Sherman Act, 15 U.S.C. § 1, and the Minnesota antitrust statute, Minn. Stat. § 325D.51; claims of race discrimination under 42 U.S.C. § 1981 and the Minnesota Human Rights Act, Minn. Stat. § 363.03; and tort claims for intentional interference with contractual relations and prospective business advantage. TRI now appeals the district court's[1] grant of summary judgment dismissing all claims. Reviewing the grant of summary judgment de novo, we affirm. See Brookins v. Int'l Motor Contest Ass'n, 219 F.3d 849, 852 (8th Cir. 2000) (standard of review).

## I. Background.

Joseph Thomas is an owner and officer of TRI. Thomas was fired by Honeywell in 1990 for sexually harassing a co-worker. He sued Honeywell, alleging race discrimination and defamation. The race discrimination claim was dismissed for lack of proof, and the defamation claim was defeated by Honeywell's defense of qualified privilege. See Thomas v. Honeywell, Inc., No. C8-94-29, 1994 WL 495087

---

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

(Minn. App. Sept. 13, 1994). In 1991, Thomas and his partners formed TRI with a plan to hire disadvantaged workers to produce high quality recycled toner cartridges. TRI's annual sales grew to $3.14 million in 1997 but declined to $1.3 million in 2001.

It is undisputed that, shortly after Boise introduced TRI to Honeywell as a potential minority-owned supplier, Michael Schneider of Honeywell called David Plantan of Boise to advise that Honeywell would not purchase TRI's recycled toner cartridges from Boise. Honeywell's decision was based upon Thomas's prior lawsuit against Honeywell. After Schneider's phone call in late October or early November 1998, a few Honeywell offices in Minneapolis purchased TRI products, but only in small quantities. Boise continued to use TRI as a supplier of recycled toner cartridges in the Twin Cities area, but TRI's sales to Boise (and to other large TRI customers) declined in 1999 and 2000.

In response to defendants' motions for summary judgment, TRI submitted evidence that, after Schneider's phone call, Boise sales representatives stopped aggressively promoting TRI products to other customers, selectively increased Boise's prices on TRI products sold to other customers, and did not fill orders for TRI products from customers outside the Twin Cities area. These actions resulted in a substantial decline in TRI's sales to Boise and its customers. There was no written contract between TRI and Boise, only a series of purchases and resales by Boise.

The district court dismissed TRI's antitrust claims on the ground that TRI failed to prove an agreement in restraint of trade between Boise and Honeywell to injure TRI. The court dismissed the § 1981 claims because TRI failed to prove that Honeywell's reason for refusing to do business with TRI was a pretext for intentional race discrimination, and because TRI's retaliation claim was not properly pleaded. The court dismissed TRI's state law discrimination claim as time-barred, and its tortious interference claims for lack of proof. TRI failed to brief the tortious interference claims on appeal, and we therefore decline to consider them.

## II. The Antitrust Claims.

TRI argues that Boise and Honeywell violated Section 1 of the Sherman Act, which declares unlawful "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Section 1 focuses exclusively on concerted action. Thus, Honeywell's unilateral refusal to purchase TRI's products, either from Boise or directly from TRI, cannot violate § 1. See, e.g., Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984). However, if Honeywell and Boise agreed that Boise would not sell TRI products to any customer, that agreement could fall within § 1's prohibition, assuming TRI could produce adequate proof that the agreement was "in restraint of trade." TRI argues that such an agreement may be inferred from the actions Boise took after the phone call from Honeywell that hurt Boise's sales of TRI products to other Boise customers.

To survive a motion for summary judgment, a § 1 plaintiff must present evidence of an agreement or conspiracy "that tends to exclude the possibility that [the defendants] were acting independently." Monsanto, 465 U.S. at 764. "[I]f [the defendants] had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy," and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 596-97 (1986); see Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., 203 F.3d 1028, 1032 (8th Cir.) (en banc), cert. denied, 531 U.S. 815 (2000).

In this case, we agree with the district court that TRI presented insufficient evidence of an agreement or conspiracy between Honeywell and Boise to restrict Boise's sale of TRI products to other Boise customers. TRI, Boise, and Honeywell do not compete with each other in any segment of the office products market. In traditional antitrust terms, TRI is a manufacturer or supplier, Boise is an independent distributor, and Honeywell is an end user of one type of office product. Thus,

Honeywell had no rational *economic* motive to coerce Boise into not selling TRI products to Boise's other customers. Nor was it in Boise's economic interest to allow Honeywell to restrict Boise's sales to other end users. Rather, to the extent TRI manufactured products desired by Boise's customers (other than Honeywell), "it is much more plausible to believe that [Boise's] interests coincided, rather than conflicted, with those of [TRI]." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 285 (1968).

TRI presented *no* evidence that Honeywell influenced or attempted to influence Boise's supplier-distributor relationship with TRI in any way other than to advise Boise that Honeywell did not wish to purchase TRI products. On the other hand, Boise presented deposition testimony and affidavits from its national and Twin Cities sales personnel giving independent reasons for the decline in Boise's sales of TRI products after October 1998, for declining to fill orders for TRI products from customers who could not be served by Boise's Twin Cities distribution center, and for the few price fluctuations that TRI found through discovery of Boise's sales records. On this record, the district court properly granted summary judgment dismissing TRI's antitrust claims.[2]

### III. The § 1981 Claims.

TRI's complaint alleged that Honeywell violated 42 U.S.C. § 1981(a) "by engaging in purposeful racial discrimination against TRI, through interference with

---

[2]Like § 1, the Minnesota statute declares: "A contract, combination, or conspiracy between two or more persons in unreasonable restraint of trade or commerce is unlawful." Minn. Stat. § 325D.51. TRI's claim under this statute was properly dismissed because the Minnesota antitrust laws are interpreted consistently with the federal antitrust laws. See Minn. Twins P'ship v. State, 592 N.W.2d 847, 856 (Minn.) (adopting the federal antitrust exemption for professional baseball), cert. denied, 528 U.S. 1013 (1999).

TRI's contractual relationship with Boise." Like the district court, we assume without deciding that § 1981's protections extend to minority-owned corporations such as TRI. See Webster v. Fulton County, 283 F.3d 1254, 1256 n.3 (11th Cir.), cert. denied, 532 U.S. 942 (2002). We also assume that TRI presented sufficient evidence to establish a prima facie case of racial discrimination against the company. See Williams v. Lindenwood Univ., 288 F.3d 349, 355 (8th Cir. 2002).

However, we agree with the district court that Honeywell offered a legitimate, nondiscriminatory reason for refusing to deal with TRI -- the prior lawsuit Joseph Thomas filed against Honeywell -- and that TRI failed to present sufficient evidence that this stated reason was a pretext for intentional race discrimination. There is undisputed evidence, including Honeywell's Master Agreement with Boise, that Honeywell actively sought to do business with minority-owned office products suppliers. There is also undisputed evidence that the Honeywell decision-makers who refused to deal with TRI in 1998 knew that Thomas had sued Honeywell but did not know that he had alleged race discrimination by Honeywell in that lawsuit. In these circumstances, summary judgment on the section 1981 claim is proper. Although TRI argues that Honeywell acted from "a discriminatory animus toward Thomas," it offered insufficient proof that the animus was based upon race.

TRI also appeals the district court's ruling that it failed to plead a § 1981 retaliation claim, arguing that the retaliation claim was "inquired into during discovery and was 'inextricably intertwined' with the [race] discrimination claim." The district court declined to consider the retaliation claim, noting that TRI's complaint did not assert a retaliation claim, and that "claims of race discrimination are separate and distinct from . . . claims of retaliation." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994). This ruling was not an abuse of the court's substantial discretion. In addition, the district court concluded that the retaliation claim "lacks an adequate basis in the law." We agree. Because the Honeywell decision-makers who refused to deal with TRI were not aware of the

alleged protected activity -- Thomas's assertion of a race discrimination claim in his prior lawsuit against Honeywell -- TRI's purported retaliation claim fails for lack of a causal connection between the protected activity and the adverse action against TRI many years later. See Smith v. Riceland Foods, Inc., 151 F.3d 813, 818-19 (8th Cir. 1998).

## IV.  The Minnesota Human Rights Act Claims.

TRI's complaint alleged that Honeywell violated Minn. Stat. § 363.03, subd. 8a(c), a provision of the Minnesota Human Rights Act, "by intentionally refusing to do business with TRI because of TRI's status as a minority owned corporation." Claims under this statute must be filed "within one year after the occurrence of the [unfair discriminatory] practice." Minn. Stat. § 363.06, subd. 3.  Honeywell refused to buy TRI products from Boise in October 1998, and TRI learned of the refusal shortly thereafter.  TRI filed this lawsuit in June 2000.  Accordingly, the district court concluded that "TRI brought its claim about five months too late."

TRI argues that this claim is not time-barred because Honeywell's October 1998 phone call to Boise "created the beginning of an agreement between Honeywell and Boise, initiated by Honeywell, to harm TRI."  But the claim as pleaded was a simple refusal to deal, which is a discrete, adverse discriminatory act.  When applying the term "occurrence of the practice" in § 363.06, subd. 3, to this type of claim, the statute of limitations begins to run when "the discriminatory act [occurred] rather than when the consequences of that act become most painful."  Turner v. IDS Fin. Servs., Inc., 471 N.W.2d 105, 108 (Minn. 1991) (citation omitted).  Moreover, as our discussion of TRI's antitrust claims makes clear, TRI presented insufficient evidence of "an agreement between Honeywell and Boise . . . to harm TRI," so its belated attempt to avoid the statute of limitations by restating its refusal-to-deal claim as some sort of continuing violation claim cannot succeed.  The district court properly dismissed this claim as time-barred.

Finally, TRI urges us to reverse the district court's grant of summary judgment because counsel for Honeywell and Boise engaged in "obfuscatory" discovery conduct, such as coaching deposition witnesses and filing contradictory and untruthful affidavits and disclosures. However, there is no indication that TRI brought these discovery complaints to the attention of the district court, as the objecting party did, for example, in <u>Chrysler Corp. v. Carey</u>, 186 F.3d 1016, 1019 (8th Cir. 1999). Thus, these discovery issues were not preserved for appeal. TRI further argues that the district court erred in considering an affidavit first submitted by Boise with its summary judgment reply memorandum. After careful review of the record, we conclude this contention is without merit.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.