**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAIUTE-SHOSHONE INDIANS OF THE
BISHOP COMMUNITY OF THE BISHOP
COLONY, CALIFORNIA, a federally
recognized Indian tribe,
               *Plaintiff-Appellant,*

               v.

CITY OF LOS ANGELES, a California
municipal corporation,
               *Defendant-Appellee.*

No. 07-16727

D.C. No.
CV-06-00736-OWW

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, Senior District Judge, Presiding

Argued August 10, 2010;
Resubmitted March 7, 2011
San Francisco, California

Filed March 14, 2011

Before: Susan P. Graber, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber

3483

**COUNSEL**

Randolph H. Barnhouse, Luebben Johnson & Barnhouse LLP, Los Ranchos de Albuquerque, New Mexico, for the plaintiff-appellant.

Lisa S. Berger, Deputy City Attorney, Los Angeles, California, for the defendant-appellee.

## OPINION

GRABER, Circuit Judge:

Plaintiff Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, California, an Indian tribe formally recognized by the United States, filed this action against Defendant City of Los Angeles for an order restoring Plaintiff to possession of land that the City took long ago in a deal with the United States. The district court dismissed the action under Federal Rule of Civil Procedure 12(b)(7) because it ruled that, under Rule 19 of the Federal Rules of Civil Procedure, the United States was a required party that Plaintiff could not join. The district court certified the appealability of its order under 28 U.S.C. § 1292(b). Upon Plaintiff's timely request, we agreed to hear this interlocutory appeal, and we now affirm.

## I.   *Background*[1]

For centuries, Plaintiff's members lived in the area now called the Owens Valley in Inyo County, California. After non-Indian settlers began to move into that area in the late Nineteenth Century, Congress moved to protect Plaintiff by acquiring land in the area and setting it aside for Plaintiff's benefit. By 1924, the United States had acquired and set aside five tracts of land totaling approximately 1,030 acres (the "Bishop Tribal Land"). Pursuant to the usual custom, the

---

[1]On review of an order dismissing an action under Rule 12(b)(7), we accept as true the allegations in Plaintiff's complaint and draw all reasonable inferences in Plaintiff's favor. *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 923 (9th Cir. 2002).

United States held the title to the Bishop Tribal Land in trust for Plaintiff.

In the Act of April 20, 1937, 50 Stat. 70, Congress authorized the Secretary of the Interior to exchange federal land and water rights in the Owens Valley for other land and water rights owned by the City. The Act placed several conditions on any such exchange. Among them, a majority of Plaintiff's adult members had to consent to an exchange; an exchange had to include the water rights appurtenant to the exchanged lands; and the value of the rights conveyed in an exchange had to equal the value of the rights received.

In 1937, the United States set out to exchange 3,126 acres of federal land, which included the Bishop Tribal Land, for 1,511 acres of land in the Owens Valley held by the City. Plaintiff alleges that the United States engaged in several improprieties in conducting that exchange. Agents of the Federal Bureau of Indian Affairs canvassed Plaintiff's members, going house-to-house and gathering signatures. Plaintiff alleges that, of the 211 signatures gathered, 187 were written on blank pieces of paper. Plaintiff further alleges that the remaining 24 signatures were written on term sheets bearing a "grossly insufficient description" of the particulars of the exchange.

On May 18, 1938, the United States effected the exchange with the City by a written agreement. The agreement reserved to each party all water rights appurtenant to the exchanged lands, and the appraisals on which both parties relied did not include the value of those water rights. Plaintiff alleges that the agreement violated the Act's requirement that an exchange include the water rights appurtenant to the land exchanged. Plaintiff further alleges that the parties had insufficient evidence from which to conclude that they were exchanging rights of equivalent value because the appraisals did not include the value of the water rights.

In July 1941, the United States formally conveyed the Bishop Tribal Land to the City by an executed deed. Since that time, the City has excluded Plaintiff's members from occupying and using the Bishop Tribal Land.

Plaintiff filed this action against the City in 2006, asking the district court mainly "for an order ejecting [the City] from the Bishop Tribal Land and restoring [Plaintiff] to possession." Plaintiff did not name the United States as a party. Eventually, the City moved to dismiss the action under Rule 12(b)(7), arguing that the United States was a required party under Rule 19 and that it could not be joined. The district court agreed and dismissed the suit with leave to amend. Rather than amend its complaint, however, Plaintiff decided to pursue an interlocutory appeal under 28 U.S.C. § 1292(b). Finding this case "exceedingly close," the district court granted a certificate of appealability. Upon Plaintiff's timely request, we agreed to hear this appeal.

II.  *Discussion*

[1] Our review of a dismissal under Rule 12(b)(7) has three parts. *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005). First, guided by the provisions of Rule 19(a), we must decide whether it is "*desirable* in the interests of just adjudication" to join the United States. *Id.* at 779 (internal quotation marks omitted). If so, we must determine next whether a court feasibly could order that the United States be joined. *Id.* Finally, if a court cannot so order, then, guided by the provisions of Rule 19(b), we must decide whether "in equity and good conscience" the case may proceed in the absence of the United States. *Id.* at 779-80.

We review for abuse of discretion the district court's decision to dismiss this action for failure to join the United States. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002). To the

extent that the district court's decision involves questions of law, we review de novo. *Id.*

A.  *The United States is a "required party" under Rule 19(a).*

**[2]** We have interpreted Rule 19(a)[2] to provide for a two-part analysis. *Yellowstone County v. Pease*, 96 F.3d 1169, 1172 (9th Cir. 1996). We first examine whether the district court could award complete relief to the parties present without joining the non-party. *Id.* at 1172. Alternatively, we ask whether the non-party has a "legally protected interest" in this action that would be "impaired or impeded" by adjudicating the case without it. *Id.* at 1172-73. If we answer either of those questions in the affirmative, then the United States is a "required party" under Rule 19(a). *Id.* at 1172.

We have no doubt that the United States is a required party. The district court could not award the relief that Plaintiff seeks in the absence of the United States. Plaintiff's theory of this case involves three steps that it claims lead to its requested relief, which is to eject the City from the Bishop

---

[2]In its recently amended form, Rule 19(a) provides:

**Persons Required to Be Joined if Feasible.**

(1) ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Tribal Land and to restore Plaintiff to possession of it. First, Plaintiff alleges that the United States violated the conditions in the Act when it exchanged the Bishop Tribal Land without proper consent from a majority of Plaintiff's adult members, without transferring the water rights appurtenant to the exchanged land, and without obtaining sufficient appraisals of the exchanged land. Second, because of those violations, Plaintiff theorizes that the "purported transfer" of the Bishop Tribal Land "was null and void." Finally, because the City has never lawfully held title to the Bishop Tribal Land, Plaintiff asks the district court to take the land from the City and give it to Plaintiff.

**[3]** But Plaintiff's theory skips a crucial fourth step. As Plaintiff's complaint acknowledges, the United States, not Plaintiff, conveyed the Bishop Tribal Land to the City. Even if a finder of fact were to decide that the United States violated the Act and that those violations render the land exchange null and void, the title to the Bishop Tribal Land would revert *to the United States*, not to Plaintiff. To achieve the relief that it seeks, Plaintiff would require an additional order, apart from an order ejecting the City, requiring the United States either to cede title to Plaintiff or to hold the land in trust for Plaintiff's benefit. Without such an order, we see nothing stated in Plaintiff's complaint that would require the United States to give the Bishop Tribal Land back to Plaintiff. And, before a court could bind the United States by such an order, the United States must be a party. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) (recognizing that an "outsider . . . not before the court . . . cannot be bound by the judgment rendered").

**[4]** Because we conclude that the district court could not accord complete relief to Plaintiff in the absence of the United States, the United States is a required party under Rule 19(a). We therefore need not answer the alternative question whether the United States has a legally protected interest in

this action that would be impaired or impeded by adjudicating the case without it.

B.   *The United States cannot be joined.*

**[5]** We turn to the second part of the analysis, whether the United States feasibly could be joined in this action. Because the United States has sovereign immunity, no one, including Indian tribes, may sue the United States without first obtaining permission from Congress. *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990). We therefore examine whether Congress has given Plaintiff permission to join the United States here.

**[6]** As it turns out, Congress waived its sovereign immunity over Plaintiff's claim many years ago, but Plaintiff failed to take advantage of that waiver. In 1946, Congress enacted the Indian Claims Commission Act ("ICCA"), formerly codified at 25 U.S.C. §§ 70 to 70n-2. The ICCA created an executive tribunal, the Indian Claims Commission, to hear and determine all tribal claims against the United States that accrued before August 13, 1946. 28 U.S.C. § 1505 (1982). Tribes had five years within which to file claims with the Commission. 25 U.S.C. § 70k (1976). Any claim not filed by that deadline could not "thereafter be submitted to any court or administrative agency for consideration."[3] *Id.*

---

[3]In 1978, Congress abolished the Indian Claims Commission and transferred the Commission's pending cases to the Court of Federal Claims. 28 U.S.C. § 1505. Congress also gave the Court of Federal Claims jurisdiction to hear actions for money damages brought against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). We note that, even if Plaintiff could now file a claim against the United States in the Court of Federal Claims, that court has no jurisdiction to award the injunctive relief that Plaintiff would require to achieve its desired result—an order requiring the United States to turn over the Bishop Tribal Land to Plaintiff. *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998).

**[7]** We hold that the United States cannot feasibly be joined in this action because the ICCA provided the exclusive remedy for Plaintiff's claim but Plaintiff failed to avail itself of that remedy. According to Plaintiff's complaint, it had a ripe claim against the United States by 1941, when the United States finalized its land exchange with the City, yet Plaintiff failed to file a claim with the Commission before 1951, the year in which the ICCA's statute of limitations expired. In those circumstances, the ICCA states unequivocally that no court may adjudicate Plaintiff's claim. The district court therefore lacks jurisdiction over Plaintiff's untimely claim against the United States.

Our holding finds support from our sister circuits. In *Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1457 (10th Cir. 1987), the Navajo Tribe asserted that the United States improperly transferred tribal lands to the State of New Mexico and several individuals. The Navajo Tribe named the United States, New Mexico, and the individual grantees as the defendants. *Id.* at 1462. The Tenth Circuit held that the Navajo Tribe's claim against the United States could not go forward because it fell within the exclusive jurisdiction of the Indian Claims Commission and the statute of limitations contained in the ICCA had run. *Id.* at 1464.

The Eighth Circuit arrived at a similar conclusion in *Oglala Sioux Tribe of Pine Ridge Indian Reservation v. United States*, 650 F.2d 140 (8th Cir. 1981). An Indian tribe brought an action in district court to quiet title to the Black Hills of South Dakota, alleging an unconstitutional taking under the Fifth Amendment. *Id.* at 141. The alleged taking arose from an 1877 statute that abrogated a treaty between the United States and the Sioux Nation. *Id.* at 142. The Eighth Circuit affirmed the district court's dismissal of the action, holding that the remedy provided in the ICCA negated any implied cause of action arising under the Constitution for taking of Indian land by the United States. *Id.* at 143.

Notwithstanding that body of precedent, Plaintiff argues that *Oregon Department of Fish & Wildlife v. Klamath Indian Tribe*, 473 U.S. 753 (1985), and *Swim v. Bergland*, 696 F.2d 712 (9th Cir. 1983), stand for the proposition that the ICCA does not exclude other avenues for litigating its claim against the United States. Those cases are irrelevant to the issue involved here. The United States was not a required party in *Klamath Indian Tribe* because the plaintiff tribe could have obtained complete relief without joining the United States as a party. The tribe filed suit against the State of Oregon, claiming that its treaties and subsequent agreements with the United States protected the tribe from state regulation. The tribe sought only to enjoin Oregon from enforcing certain *state* regulations that would prohibit the tribe from hunting and fishing outside its reservation. Nothing about the relief requested in *Klamath Indian Tribe* required any action by the United States.

In *Swim*, 696 F.2d at 714-15, we addressed a situation in which two tribes *defended* a declaratory judgment action brought by non-Indians who wanted to obtain grazing permits for property owned by the United States and reserved for the tribes. The tribes were not seeking to be restored to land that they formerly inhabited; rather, they wanted only to keep the land that they already had. Thus, the ICCA had no application in *Swim* because the tribes were not suing anyone; they were defending their interests in an action filed by non-Indians.

Plaintiff also argues that 28 U.S.C. § 1362 provides an independent waiver of sovereign immunity over actions brought by Indian tribes against the United States.[4] We

---

[4]Title 28 U.S.C. § 1362 provides:

> The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

decline Plaintiff's sweeping invitation to read § 1362 as waiving sovereign immunity over every action brought by an Indian tribe against the United States when the statute says nothing about either sovereign immunity or actions against the United States. Section 1362 merely grants jurisdiction to the district courts to adjudicate civil actions by Indian tribes so long as no other jurisdictional bar prohibits the courts from hearing those actions.

[8] In summary, we agree with our sister circuits that the ICCA provided the exclusive remedy for claims accrued by Indian tribes against the United States before 1946. Because Plaintiff had such a claim but failed to present it to the Indian Claims Commission within the statute of limitations prescribed by the ICCA, Plaintiff has lost its opportunity to litigate its dispute with the United States. Accordingly, the United States cannot feasibly be joined in this suit.

C.  *This case cannot proceed in equity and good conscience without the United States.*

[9] We turn to the last part of the analysis, whether this case may proceed in the absence of the United States under Rule 19(b).[5] The Supreme Court has interpreted Rule 19(b) as

---

[5]Rule 19(b) provides:

   **When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

   (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

   (2) the extent to which any prejudice could be lessened or avoided by:

   (A) protective provisions in the judgment;

   (B) shaping the relief; or

requiring us to consider at least four interests: (1) the plaintiff's interest in having a forum; (2) the defendant's interest in not proceeding without the required party; (3) the interest of the non-party by examining "the extent to which the judgment may as a practical matter impair or impede [its] ability to protect [its] interest in the matter"; and (4) the interests of the courts and the public in "complete, consistent, and efficient settlement of controversies." *Patterson*, 390 U.S. at 109-11 (internal quotation marks omitted). That list is not exclusive of other considerations, however. At all events, Rule 19(b) requires us to undertake a "practical examination of [the] circumstances" to determine whether an action may proceed "in equity and good conscience" without the absent party. *Id.* at 119 n.16.

**[10]** Plaintiff argues that all of the *Patterson* factors favor allowing this case to proceed in the absence of the United States. We disagree. First, Plaintiff claims a "strong interest" in having this forum because it has no other avenue available for establishing its right to the Bishop Tribal Land. That is a dilemma of Plaintiff's own making. Congress gave Plaintiff an opportunity to adjudicate its dispute with the United States but Plaintiff missed that opportunity. Even accepting Plaintiff's claim that it cannot obtain relief in any other forum today, the fact that Plaintiff at one time had a "satisfactory alternative forum" but failed to take advantage of it significantly lessens the strength of Plaintiff's interest in having this action go forward. *Id.* at 109.

Second, because the City does not face the possibility of multiple litigation, inconsistent relief, or sole responsibility

---

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

for a liability that it shares with someone else, Plaintiff argues that the second *Patterson* factor favors it, too. Plaintiff interprets that factor too narrowly. Rule 19(b) tells us to consider the extent to which a judgment rendered in the United States' absence might *prejudice* the existing parties. In *Patterson*, the Supreme Court interpreted that directive to mean that we must consider a defendant's "interest" in whether a case should proceed without a required party. *Id.* at 110. As examples of interests a defendant might have, the Court observed that a defendant "may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another." *Id.* We do not take that observation to mean that those are the *only* interests a defendant might have in not wanting to proceed with an action in the absence of a required party who could not be joined.

**[11]** Here, even if we agree with Plaintiff that the City does not face the possibility of multiple litigation, inconsistent relief, or responsibility for liability that it would share with the United States, the City still has a significant interest in not wanting to proceed with this case. To achieve the relief that Plaintiff seeks, Plaintiff must prove that agents of the United States violated the 1937 Act when they gave the Bishop Tribal Land to the City. The City cannot reasonably be expected to defend the actions of an entirely different entity over which the City had no control. Proceeding with this suit in the absence of the United States therefore would prejudice the City because the City by itself cannot defend effectively against the crux of Plaintiff's allegations, even though those allegations may be untrue. Accordingly, we conclude that the second *Patterson* factor weighs against allowing Plaintiff to proceed with its suit.

**[12]** The third factor militates against allowing this case to proceed as well. Plaintiff has accused *federal* agents of wrongdoing. The United States is therefore the proper party to defend itself against Plaintiff's accusations. If a jury were to agree with Plaintiff—perhaps because the City could not

mount an adequate defense—a judgment in Plaintiff's favor "may as a practical matter impair or impede" the United States' ability to protect its interest. *Patterson*, 390 U.S. at 110. Plaintiff would have an argument that such a judgment would estop the United States from relitigating the legality of its actions if the United States chose to do so in a future case. *Montana v. United States*, 440 U.S. 147, 155-62 (1979).

**[13]** There remains the interests of the courts and the public in "complete, consistent, and efficient settlement of controversies." *Patterson*, 390 U.S. at 111. Because it has no other forum for litigating this dispute, Plaintiff argues that the public's interest in the settlement of controversies favors letting Plaintiff proceed with its action in the absence of the United States. But, as the Supreme Court instructed in *Patterson*, the courts and the public have an interest in the *complete* and *efficient* settlement of controversies. *Id.* Even if we allowed Plaintiff to proceed here, the best Plaintiff could do would be to undo the 1938 exchange agreement between the City and the United States. The controversy regarding what to do with the Bishop Tribal Land after such an order would remain alive and incapable of resolution in the absence of the United States. Because Plaintiff's action only gets Plaintiff part of the way to the relief that it wants, the interest of the courts and the public in a complete and efficient settlement does not support Plaintiff's position.

**[14]** Accordingly, we hold that the Rule 19(b) analysis does not favor allowing Plaintiff to proceed with this action in the absence of the United States. We therefore hold that the district court did not abuse its discretion by dismissing this action under Rule 12(b)(7).

As a final matter, we reject Plaintiff's argument that our holding in *Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251 (9th Cir. 1983), which we recently reaffirmed in *Lyon v. Gila River Indian Community*, 626 F.3d 1059 (9th Cir. 2010), provides an exception to Rule 19(b) into which this

case fits. As we explained in *Lyon*, 626 F.3d at 1070, we held in *Puyallup* that, "in a suit by an Indian tribe to protect its interest in tribal lands, regardless of whether the United States is a [required] party under Rule 19(a), it is *not* [a] party in whose absence litigation cannot proceed under Rule 19(b)." (Internal quotation marks omitted.)

At first blush, that holding appears to support Plaintiff's position. But, in *Lyon*, we expressly observed that the United States' interests were "shared and adequately represented" by the plaintiff tribes. *Id.* at 1071. Similarly, in *Puyallup*, 717 F.2d at 1254, the plaintiff tribe's position was not adverse to the interests of the United States, which simply held the title to the disputed land in trust for the benefit of the tribe. The central dispute in *Puyallup*, as in *Lyon*, involved the plaintiff tribe and the named defendant. It did not involve the United States. *See also Fort Mojave Tribe v. Lafollette*, 478 F.2d 1016, 1018 (9th Cir. 1973) (allowing a suit by an Indian tribe to proceed without the United States when "[i]t [did] not appear that failure to join the United States would radically and injuriously affect its interest" (internal quotation marks omitted)).

Here, by contrast, the lawfulness of the United States' actions forms the central issue. In these circumstances, the *Puyallup* exception to Rule 19(b) does not apply.

AFFIRMED.