**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1936
_____

LAKEISHA MCCLAIN; LEONARD MCCLAIN; L&M AGENCY

v.

AVIS RENT A CAR SYSTEM, INC.

L&M Agency,
                                        Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 2-12-cv-05151)
District Judge: Honorable William H. Walls
_____

Argued: January 29, 2016
_____

Before: VANASKIE, SHWARTZ, and RESTREPO, *Circuit Judges*.

(Filed: April 28, 2016)

Stephen G. Console, Esq.
Rahul Munshi, Esq. [ARGUED]
Console Law Offices LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
        *Attorneys for Appellant*

Paul J. Halasz, Esq. [ARGUED]
Theresa A. Kelly, Esq.
Michael H. Dell, Esq.

Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054
   *Attorneys for Appellee*

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*.

Appellant L&M Agency Inc. challenges the District Court's order granting

summary judgment to Appellee Avis Rent A Car System Inc. on Appellant's 42 U.S.C.

§ 1981 discrimination and retaliation claims. Under the circumstances presented here, we

find that Appellant has sufficiently established pretext to defeat summary judgment on its

discrimination claim. Appellant has failed, however, to make out a prima facie case of

retaliation. Accordingly, we will reverse the District Court with respect to Appellant's

discrimination claim, affirm the District Court with respect to Appellant's retaliation

claim, and remand this matter for further proceedings.

**I**

Lakeisha McClain and her husband Leonard McClain, both of whom are African-

American, owned[1] and operated[2] L&M Agency Inc. ("L&M" or "Appellant") for the

purpose of running a vehicle rental business. In 2003, L&M entered into an Independent

Operator Agreement ("IOA" or "Agreement") with Avis Rent A Car System Inc.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] Ms. McClain is the president and sole shareholder of L&M.
[2] Ms. McClain was the primary operator of L&M's location initially, but Mr. McClain assumed the primary operator role in approximately 2005.

2

("Avis"), whereby L&M would operate an Avis location on South Henderson Road in King of Prussia, Pennsylvania.

Under the terms of the IOA, L&M would earn a commission based on the revenue generated from car rentals at that location, and Avis would provide L&M with the rental office, vehicles, business systems, training, and support. Among other things, the IOA stated that L&M would: (1) "[u]se the location and all Company-supplied equipment, including all telephones, solely for the operation of the Business;" (2) ensure that its staff be uniformed; (3) maintain the office "in good condition and repair;" and (4) allow Avis to enter the location for any purpose, including audits and inspections. App. 345-48, 352. The IOA could be terminated by either party without cause upon ninety days' notice, or for good cause on thirty days' notice.

L&M's operation of the Avis location was largely without incident until 2007, when Carol Mancini became the district manager for the region. According to Mr. McClain, the relationship with Ms. Mancini was rocky from the very beginning. During their first encounter, Mr. McClain claims that Ms. Mancini told him that she did not like him. In addition, Mr. McClain claims that Ms. Mancini showed disdain for Chester, Pennsylvania, a predominantly African-American city where Mr. McClain is from, and told him that she briefly attended Chester High School and was chased home from school every day. The McClains claim that Ms. Mancini made other comments they perceived

3

to be racially motivated, and that Ms. Mancini did not adequately respond to their requests for assistance on various business matters.[3]

In August of 2007, an attorney for the McClains sent a letter to Avis complaining that Ms. Mancini was discriminating against the McClains due to their race ("the 2007 Letter"). Avis found the McClains' claims to be unsubstantiated, but made adjustments to limit Ms. Mancini's interactions with the McClains. However, in 2009, Ms. Mancini's supervisor was promoted, which lead to an increase in Ms. Mancini's interactions with the McClains.

On November 3, 2011, Mark Osbourne, Avis' Northeast Regional President, visited the L&M location. He was accompanied by other Avis officers and employees, including Ms. Mancini. Mr. Osbourne was not pleased with L&M. Among other things, Mr. Osbourne expressed dissatisfaction about: (1) the cleanliness and tidiness of the location; (2) the presence of the McClains' personal items in various back office rooms; and (3) L&M's below-target counter sales (including vehicle upgrades and additional services) to its customers. On November 10, 2011, Ms. Mancini and Barbara Long, Avis' Territory Performance Manager for King of Prussia, returned to the L&M location to determine if any progress had been made on these issues. Ms. Mancini did not

---

[3]   For example, Mr. McClain alleges that when he called the Avis office to have them repair the exterior lights at the King of Prussia location so that L&M customers and employees could see at night, he heard Ms. Mancini respond in the background by saying, "you're from Chester. You scared of the dark?" App. 118. In addition, the McClains alleged that Ms. Mancini was dictating higher rental rates for L&M than for other operators in the area, which negatively impacted L&M's ability to compete. The McClains also alleged that Ms. Mancini was restricting the rental vehicles available to L&M, which similarly impaired L&M's ability to compete.

perceive any substantial improvement to the issues previously identified by Mr. Osbourne, and noticed that Ms. McClain and her children were in one of the back office rooms for a non-work purpose. Thereafter, a confrontation ensued, during which Ms. Mancini and the McClains raised their voices. At one point, Mr. McClain announced that he was planning to call his lawyer or that his lawyer was on his way.

At some point in November of 2011, after the November 10th visit, Avis decided to terminate the IOA with L&M. Mr. Osbourne made this decision, although he received input from others. Avis communicated the termination decision to L&M in a letter signed by Ms. Mancini, dated December 1, 2011. The letter offered no reason for the termination, and purported to be effective ninety days thereafter. L&M's lawyer responded to the termination in a letter dated December 27, 2011. Therein, L&M's lawyer accused Avis of, among other things, discriminating against L&M because the McClains are African-American. Avis responded via an email dated December 30, 2011, and a letter dated January 24, 2012. In the January 2012 letter, Avis contested the McClains' allegations, and, for the first time, stated two reasons for the termination: (1) failure to "keep the location in a neat and businesslike manner;" and (2) "poor revenue performance." App. 369. After the termination was complete, L&M and the McClains filed suit against Avis in the District of New Jersey in August of 2012.

During the course of discovery, L&M served interrogatories on Avis. Interrogatory Number 1 read as follows: "Describe in detail each and every reason asserted by Defendant for terminating Plaintiff's contractual relationship with Defendant, and describe the factual basis for same." App. 374. Avis responded with the following:

5

> Avis states that Plaintiff's contractual relationship with Avis terminated because of Plaintiff's unsatisfactory performance, and because of Plaintiff's failure to abide by company standards and policies. Plaintiff failed to meet its goals for counter sales and demonstrated a lack of sufficient sales skills overall. Plaintiff failed to sufficiently maintain a visible and recognizable presence in the local marketplace. Plaintiff did not diligently promote the Avis brand in Plaintiff's area. Plaintiff did not demonstrate a proper use of telephone techniques. Plaintiff's employees behaved in a hostile and unprofessional manner towards Avis. Plaintiff's employees refused to wear Avis uniforms. Plaintiff was given every opportunity to correct these faults, but demonstrated an inability to do so. Avis additionally refers to the Local Market Car: Contact Reports produced in response to Plaintiff's Request for Production of Documents – Set 1.

App. 374. Mr. Osbourne was the Avis representative who signed the interrogatory responses. In doing so, he certified that the responses were true to the best of his knowledge, information, and belief.

During his deposition, Mr. Osbourne was asked the reasons for his decision to terminate the IOA with L&M. In response he said:

> There was a multitude of things that went into the decision. The primary decision was the location filth, and I mean the worst I have ever seen at any location in all my years, the hostile business relationship with our people, and that revenue wasn't going up, CSI upsells not being right; all of those go towards my decision.

App. 516. Mr. Osbourne also explained that "the location, when I visited it, was the dirtiest location I'd even been to . . . when I saw the location, that became one of the most important pieces to me." App. 512. In addition, Mr. Osbourne was specifically asked about the reasons set forth in Avis' response to Interrogatory Number 1. When asked whether L&M ever demonstrated to him a lack of sufficient sales skills, Mr. Osbourne

6

responded: "No, because I wasn't around long enough to know." App. 516. When asked whether he had discussed L&M's marketing or sales calls with anyone, Mr. Osbourne responded: "I did not, no." App. 516. When asked whether L&M's failure to demonstrate proper telephone techniques played any role in the decision to terminate the IOA, Mr. Osbourne responded: "Not at that time, no . . . no." App. 516. When asked whether the refusal of L&M employees to wear Avis uniforms played any role in the termination decision, Mr. Osbourne responded: "No." App. 517.

Following the completion of discovery, Avis moved for summary judgment on both of L&M's remaining claims: discrimination and retaliation. The District Court granted Avis's motion and entered summary judgment in favor of Avis and against L&M on both claims. This timely appeal followed.

## II

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.[4]

L&M brought its claims pursuant to 42 U.S.C. § 1981(a), which states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

---

[4]     We are satisfied that L&M has Article III standing as it alleged that it sustained an injury-in-fact as a result of the allegedly racially motivated termination of its contract with Avis. In addition, under the facts of this case, we are satisfied that it has statutory standing under § 1981 based on the theory that the corporation was discriminated against due to the race of its owner and main operator. *See, e.g.*, *Thinket Ink Inf. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1059-60 (9th Cir. 2004); *Gersman v. Group Health Ass'n, Inc.*, 931 F.2d 1565, 1569 (D.C. Cir. 1991), *vacated on other grounds*, 502 U.S. 1068 (1992).

7

Section 1981 prohibits racial discrimination and retaliation against those who have opposed such discrimination. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008). Independent contractors may pursue relief under § 1981 for discriminatory and retaliatory acts that occurred during the course of their independent contractor relationship. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009).

## A

In a pretext suit such as this, a § 1981 discrimination claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (acknowledging that the *McDonnell Douglas* framework is appropriate for cases based on a "pretext" theory); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 298 (3d Cir. 2010) ("The burden on a § 1981 plaintiff is to 'prove purposeful discrimination,' and the *McDonnell Douglas* framework assists in this endeavor by structuring the evidence on the issue of 'whether the defendant intentionally discriminated against the plaintiff.'" (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989))). The first step of the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff successfully completes this step, as the District Court found here, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the termination. *Id.* If the defendant is able to do so, as the District Court also found here, the burden shifts back to the plaintiff to present "some evidence, direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason was more likely that not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). L&M challenges the District Court's conclusions with respect to this third step—pretext.

In rejecting L&M's arguments under the first method of establishing pretext, the District Court concluded that L&M failed to come forward with evidence to demonstrate that Avis' rationale for the termination was "so weak, incoherent, implausible or inconsistent an explanation that a reasonable factfinder would find it unworthy of credence." App. 29. As the District Court correctly recognized, we have previously held that "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. In *Fuentes*, we elaborated by saying: "to avoid summary judgment the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* at 764 (citations omitted). In that same opinion, however, we also declared:

> We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder.

9

> That is because the factfinder's rejection of some of the
> defendant's proffered reasons may impede the employer's
> credibility seriously enough so that a factfinder may
> rationally disbelieve the remaining proffered reasons, even if
> no evidence undermining those remaining rationales in
> particular is available.

*Id*. at 764 n.7.

In light of that framework, we consider Avis' stated reasons for the termination. At first, Avis gave no reasons for the termination. After receiving L&M's claims of discriminatory treatment, Avis relented and articulated two of its reasons (failure to "keep the location in a neat and businesslike manner" and "poor revenue performance"). Next, in its answer to Interrogatory Number 1, Avis articulated at least eight of its reasons, but notably excluded one of its previously stated reasons—failure to keep the location in a neat and businesslike manner. Finally, during his deposition, the Avis decision-maker stated that there were only three factors that contributed to the termination decision and he backed away from, either in whole or in part, no less than five of the reasons articulated in the interrogatory answer. Importantly, the Avis decision-maker placed substantial weight on the cleanliness issue at his deposition—a reason that was mentioned in the January 2012 letter, but that was omitted from the interrogatory answer. In our view, these inconsistent answers place this case squarely within the purview of *Fuentes* footnote seven. Avis has proffered a "bagful of legitimate reasons" and L&M has, at the very least, "cast substantial doubt on a fair number of them." *Fuentes*, 32 F.3d 764 n.7. Accordingly, L&M has done enough for the purposes of summary judgment to satisfy its

10

burden as to pretext, because a reasonable factfinder under these circumstances could disbelieve Avis' articulated legitimate reasons.

**B**

To state a prima facie case of retaliation under § 1981 a plaintiff must show that: (1) they engaged in protected activity; (2) the employer took an adverse employment action against them; and (3) there was a causal connection between the protected activity and the adverse employment action. *Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010). To engage in "protected activity" a plaintiff cannot complain about merely unfair treatment, rather they must complain about discrimination based on membership in a protected class. *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995).

We agree with the District Court that neither of Mr. McClain's statements on November 10, 2011, amount to protected activity. Mr. McClain's first statement was that his lawyer was "on the way" after the argument took place between Ms. Mancini and the McClains. App. 31. Mr. McClain's second statement was to Ron Knaust, Ms. Mancini's former supervisor: "here we go again with Carol. It's crazy, the way how she just acted." App. 31. As the District Court correctly pointed out, neither statement explicitly or implicitly communicated a complaint about racial discrimination.

In contrast, the 2007 Letter, which explicitly complained about racial discrimination, was protected activity. However, we agree with the District Court that L&M is unable to demonstrate a causal connection between the 2007 Letter and the 2011 termination.

11

The more than four year gap between the protected activity and the adverse employment action is substantial. We have previously held that a period of days or weeks can be unduly suggestive of a retaliatory motive, but have found periods of months or years to be insufficient. *Compare Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (timing of two days sufficed to show causation), *and Shellenbergher v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (timing of ten days, along with other evidence, was enough to show causation), *with Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) (timing of over two months was not unduly suggestive of retaliatory motive), *and Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (timing of nineteen months did not support a finding of a causal link).

In a case like the one now before us, with such a substantial gap in the timing, a plaintiff must come forward with some other evidence, whether it be direct or circumstantial, to make the causal connection between the protected activity and the adverse action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). L&M has failed to do so. While it is true that courts may consider a party's inconsistent reasons for the termination in the causation analysis, *id.* at 281, we have not found such evidence, in and of itself, to be sufficient for causation purposes under the circumstances presented here. Moreover, L&M has presented no competent evidence that Mr. Osbourne, the undisputed Avis decision-maker, was aware of the 2007 Letter at the time he made the decision to terminate the IOA in 2011. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196-97 (3d Cir. 2015) (holding that a plaintiff "cannot establish . . . a

12

causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted" (citations omitted)). In addition, nothing in the record suggests that the 2007 Letter resulted in a change in the relationship between the parties that could reasonably be viewed as a "pattern of antagonism." *See Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993) (recognizing a "pattern of antagonism" in a slew of written and verbal warnings, disciplinary activity, and other conduct, all of which caused the parties' relationship to deteriorate and established a pattern of behavior). Indeed, L&M presented no evidence that Ms. Mancini ever made threats or comments concerning the complaints contained in the 2007 Letter. Finally, several intervening factors arose between the 2007 Letter and the termination in 2011, including a documented history of below-target CSI performance by L&M. In sum, we agree with the District Court that L&M has failed to meet its burden with respect to the causation element of its retaliation claim. Accordingly, we will affirm the District Court's grant of summary judgment on the retaliation claim.

### III

For the foregoing reasons, we conclude that L&M has discredited enough of Avis' proffered legitimate, non-discriminatory reasons to show pretext sufficient to defeat summary judgment on the discrimination claim. On the retaliation claim, we conclude that L&M has not made a prima facie case of retaliation because it is unable to demonstrate a causal connection between the termination and the sole instance of

13

protected activity.  Accordingly, we will affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.