# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 23, 2016   Decided March 10, 2017

No. 15-7070

NANKO SHIPPING, USA, PARENT COMPANY OF NANKO
SHIPPING GUINEA, ET AL.,
APPELLANTS

v.

ALCOA, INC. AND ALCOA WORLD ALUMINA, LLC,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01301)

*Donald M. Temple* argued the cause and filed the briefs for
appellants.

*Thomas E. Birsic* argued the cause for appellees. With
him on the brief were *Matthew J. Louik* and *David T. Case*.

Before: ROGERS, BROWN and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

Dissenting opinion filed by *Circuit Judge* BROWN.

PILLARD, *Circuit Judge*:  The Republic of Guinea is one of the world's principal sources of bauxite, an aluminum ore. After Guinea declared independence from France in the middle of the last century, it sought to ensure that the exploitation of its natural resources would not only provide business for multinational corporations based overseas that invested in the ore's extraction, but would also benefit the Guinean economy. Plaintiff Nanko Shipping Guineé (Nanko) claims to be the beneficiary of one of Guinea's legal undertakings to that end, and contends in this case that defendants (collectively, Alcoa) violated corresponding obligations.  Other named plaintiffs—Nanko's owners, Nanko Shipping USA and Mori Diané, an American of Guinean descent—are not before us, having not appealed the district court's order dismissing them for lack of standing.

The district court granted Alcoa's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to join Guinea, which Alcoa asserts is a Rule 19 required party.  The district court concluded that Guinea could not be joined because it is entitled to sovereign immunity.  But it is not apparent why Guinea is a required party and, if it is, whether Nanko's allegations bring Guinea within the commercial-activity exception to foreign sovereign immunity such that its joinder would be feasible.  We accordingly reverse and remand for further proceedings.

**I.**

On review of the order granting the motion to dismiss, we assume—as did the district court—the truth of the facts alleged in Nanko's proposed Second Amended Complaint.  According to that complaint, in 1963 the Republic of Guinea and the Harvey Aluminum Company of Delaware (now Halco) signed an agreement establishing the Compagnie des Bauxites de

Guinée (CBG) for the purpose of developing Guinea's rich bauxite mines.[1]  CBG is a corporation of which Guinea owns a 49 per cent share and Halco 51 per cent.  Nanko alleges that defendant Alcoa, in turn, is somehow both the minority owner and alter ego of Halco.  Over the last half century, CBG has extracted and exported more than 600 million tons of Guinean bauxite.

Under Article 9 of the CBG Agreement, Guinea reserved the right to require that up to 50 per cent of the Republic's bauxite be shipped on vessels flying the Guinean flag or chartered by the Guinean government, provided that the freight rates those Guinean shippers offered are no higher than, and the services equal to, those otherwise available on the international shipping market.  That clause presumably was designed to ensure that some of the business generated by the bauxite mines would go to qualified Guinean shipping firms and thereby benefit the Guinean economy.

Nanko alleges that, in August 2011, Guinea entered into a Technical Assistance Agreement (TAA) with Nanko.  That document is neither quoted in nor attached to the pleadings, nor is it otherwise in the record.  Pursuant to the TAA, Nanko alleges, it "assumed Guinea's rights" under Article 9 of the CBG Agreement "to manage, control and ship" up to 50 per cent of Guinean-produced bauxite.  Prop. Second Am. Compl. at 2.

Later in 2011, CBG's Board of Directors allegedly invited its constituent corporations, including Halco and Alcoa, to contact Nanko to make shipping arrangements.  Nevertheless,

---

[1] Nanko calls this agreement a "convention," *see* Appellant's Br. 2, but that term usually denotes an accord between states.  The cover page of the agreement describes it as an "Agreement Between the Republic of Guinea and Harvey Aluminum Co. of Delaware."

Halco and Alcoa refused to deal with Nanko, offering "only a few limited micro-tender shipping opportunities" that were "substantially less in value and volume than the shipping rights and contracts" to which Nanko claims it is entitled under the TAA. Prop. Second Am. Compl. ¶¶ 26, 46. Halco and Alcoa allegedly added insult to injury, posing questions about Nanko's "background and capacity" that were not asked of other shipping companies and then refusing to credit Nanko's responses. *Id.* at ¶¶ 42, 65. Guinea, for its part, "repeatedly urged" Halco and Alcoa to hire Nanko to ship their bauxite. *Id.* at ¶ 76.

In this action, Nanko initially brought two claims: one for breach of the CBG Agreement, asserting that it is a third-party beneficiary thereof, and another for racial discrimination in violation of 42 U.S.C. § 1981. Alcoa moved to dismiss on a variety of grounds, including lack of standing, failure to state a claim, and failure to join a required party. Nanko responded with a proposed Second Amended Complaint adding Halco as a defendant and asserting an additional claim against Alcoa for tortious interference with contractual relations.

The district court dismissed the case under Rule 12(b)(7) for failure to join a Rule 19 party. Guinea was a required party under Rule 19(a), the court concluded, because resolving Nanko's claims would depend on defining Guinea's rights under its CBG Agreement with Halco, which might "impair or impede Guinea's right to protect its interests" under that Agreement. *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 181 (D.D.C. 2015) ("*Nanko I*"). Proceeding to the Rule 19(b) inquiry, the court concluded Guinea could not be joined because it is entitled to sovereign immunity, and that the case could not "in equity and good conscience" proceed in Guinea's absence. *Id.* at 181-82. Although it considered the allegations of the proposed Second Amended Complaint in its analysis, the

district court denied leave to file that complaint on grounds of futility because it concluded that, even if it accepted the additional allegations, it would still conclude that the case cannot proceed without Guinea.

The district court alternatively noted that if Guinea could be joined the case "would have to be dismissed so that the parties could proceed to mandatory arbitration." *Nanko I*, 107 F. Supp. 3d at 182 n.7. Because it is not clear on the present record that Alcoa (as distinct from Halco and CBG) bound itself to the relevant arbitration agreement, and because the parties have not briefed the issue, we do not here address that ground.

Nanko timely appealed and simultaneously moved the district court to reconsider its dismissal of the discrimination claim. The district court denied the reconsideration motion in an order that postdates Nanko's notice of appeal. *See Nanko Shipping, USA v. Alcoa, Inc.*, 118 F. Supp. 3d 372 (D.D.C. 2015) ("*Nanko II*"). In that order, the district court said that it had dismissed the discrimination claim for failure to state a claim, though its original dismissal rested exclusively on Rule 19 grounds. We conclude that the district court's Rule 19 holding failed to fully grapple with Nanko's allegations and that those allegations, accepted as true, state a claim for racial discrimination under § 1981.

## II.

Federal Rule of Civil Procedure 19 calls on a district court confronting a Rule 12(b)(7) motion to dismiss a case for failure to join an absent party to decide first (under Rule 19(a)) whether the absent party should be joined, and, if joinder is infeasible, to assess (under subsection (b)) whether the action among the existing parties should proceed or be dismissed in light of the missing party's absence. We have summed up the

Rule 19 inquiry as posing three questions: Should the absentee be joined, *i.e.*, is it necessary to the litigation? If so, can the absentee be joined? And finally, if the absentee should but cannot be joined, may the lawsuit nonetheless proceed "in equity and good conscience"? *W. Md. Ry. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 961 (D.C. Cir. 1990); *see Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1494 (D.C. Cir. 1995). Rule 19 promotes fair treatment of nonparties in certain circumstances where their interests, and particularly their due process rights, are at risk from litigation between others. It also seeks to avoid multiple and wasteful litigation, such as where the absence of a party would prevent the court from granting the relief sought or expose an existing party (typically the defendant) to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Rule 19 does not apply merely because dispute resolution would be more efficient with the nonparty's participation, nor because the pending case could yield precedent adverse to the absentee's interests. A decision under Rule 19 "*not* to decide" a case otherwise properly before the court is a power to be exercised only "[i]n rare instances." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 42 (1st Cir. 2009); *see also Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671 (8th Cir. 2015).

We review the district court's application of Rule 19(b)'s "equity and good conscience" test for abuse of discretion, *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1276 (D.C. Cir. 1983), but "[q]uestions of law that inform a district court's Rule 19 determination are reviewed *de novo*," *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015). Under Rule 12(b)(7), we accept Nanko's allegations as true and draw all reasonable inferences in its favor. *Paiute-Shoshone Indians*

*of the Bishop Cmty. of the Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011). We have not specifically addressed the standard of review of decisions whether an absent party is necessary and whether it cannot be joined—the first and second questions in the above triad—and we need not do so here. Under any standard of review, we cannot, on the current record, affirm the district court's conclusion that Alcoa has shown that Guinea is a necessary party to this litigation that cannot be joined, and that the case accordingly must be dismissed.

The district court determined that Guinea is a potential party required to be joined if feasible. Guinea is a necessary party under Rule 19, the district court held, simply because "[t]he Court's interpretation of the [CBG Agreement] may impair or impede Guinea's right to protect its interests" under that Agreement. *Nanko I*, 107 F. Supp. 3d at 181. But due process protects Guinea from being bound by any judgment rendered in its absence, and it is not obvious what interests Guinea would retain in the CBG Agreement if Nanko "assumed Guinea's rights" thereunder, as Nanko alleges. Prop. Second Am. Compl. at 2. *See SEC v. Bilzerian*, 378 F.3d 1100, 1108 (D.C. Cir. 2004) (absent party not required to be joined where it merely assigned rights to party). Alcoa expresses concern that the court might "construe the CBG [Agreement] in a manner inconsistent with or contrary to Guinea's own understandings or positions, without the opportunity for Guinea to be heard." Appellee Br. at 29. Rule 19 precedent is admittedly scant, but we agree with the Third Circuit that "the requirements of Rule 19(a) are not satisfied simply because a judgment against Defendants in this action might set a persuasive precedent in any potential future action." *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008). Insofar as the existing parties' interests are concerned, evidence of Guinea's actions, views, or prerogatives can be discovered and

introduced where relevant to the parties' claims and defenses even if Guinea remains a nonparty. At the current pleading stage, we do not believe the allegations can reasonably be read to show that Guinea is a necessary party.

The district court further held that Guinea could not be joined involuntarily on the ground that it is entitled to sovereign immunity under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq. See Nanko I*, 107 F. Supp. 3d at 181. The FSIA "renders a foreign government 'presumptively immune from the jurisdiction of United States courts unless one of the Act's express exceptions to sovereign immunity applies.'" *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1317 n.1 (2016) (quoting *OBB Personenverkehr AG v. Sachs*, 136 S.Ct. 390, 394 (2015)). Under the FSIA, a foreign state is not immune from claims "based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

Nanko and Alcoa sparsely briefed the immunity issue before the district court. That court's immunity holding rested exclusively on Nanko's failure to "contest" Alcoa's bare assertion that the court lacked jurisdiction over Guinea. *See Nanko I*, 107 F. Supp. 3d at 181 n.6. But Nanko did contest the point. *See* Opp'n to Mot. to Dismiss at 24 (characterizing as "a red herring and meritless" Alcoa's argument that "because Guinea is a foreign sovereign this Court lacks jurisdiction"). And Nanko's motion for reconsideration argued that the court was "not in [a] position to resolve," absent discovery, what Nanko identified as the "fact question" whether Guinea "enjoys

sovereign immunity." Mot. for Recons. at 4. Nanko's assumption that Alcoa's assertion of Guinea's immunity "may be correct" is not, in context, fairly read to concede the matter. *See* Opp'n to Mot. to Dismiss at 25. Nor did Nanko give up the point in its motion for reconsideration by stating that the district court "properly acknowledged that it [has no] jurisdiction over … Guinea *as a sovereign entity*." Mot. for Recons. at 6 (emphasis added). That statement leaves open a critical question for FSIA purposes: whether the district court has jurisdiction over Guinea *as a commercial actor*.

Before this Court, Alcoa argues in a footnote that Nanko "has utterly failed to allege any facts" establishing a FSIA exception, thus failing to overcome the "presumption of immunity." Appellee Br. at 35 n.54 (citing *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013)). That is not necessarily so. Most notably, Nanko alleges that the CBG Board—of which Guinea is a member—hosted a 2011 meeting in New York City at which Guinea "announced its authorization and contract award to [Nanko] regarding shipment of bauxite." Prop. Second Am. Compl. ¶ 22. That alleged authorization appears to be central to Nanko's theory of the case. For instance, it is that authorization on which Nanko rests its claim that defendants knew of but disregarded their contractual responsibility to deal with Nanko to ship bauxite out of Guinea. The facts as Nanko alleges them suggest that Guinea's participation in the shipping of bauxite falls within the FSIA's commercial-activity exception.

At this preliminary stage, based only on the pleadings, we see no adequate basis for the district court's dismissal of the complaint under Rule 12(b)(7). With the benefit of discovery and further briefing, as appropriate, the district court may wish to revisit the Rule 19 issues. Further proceedings may help to

clarify what interests of Guinea, if any, would be impaired in its absence, what role Guinea would play in this litigation if joined, and whether sovereign immunity prevents its involuntary joinder here. *See In re Papandreou*, 139 F.3d 247, 252 (D.C. Cir. 1998) (district courts often must "look beyond the pleadings" to decide whether an FSIA exception applies); *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981) ("[T]he court failed to consider whether more facts were needed before making the indispensable party determination given the rather unusual situation before it.").

**III.**

Our dissenting colleague would hold that the complaint failed to state a section 1981 claim sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We disagree.

Section 1981 protects the right "to make and enforce contracts" free from racial discrimination, 42 U.S.C. § 1981(a), and the pleading standards under section 1981 track those in the familiar *McDonnell Douglas* rubric for alleging a *prima facie* case of purposeful employment discrimination. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Brown v. Sessoms*, 774 F.3d 1016, 1022-23 (D.C. Cir. 2014) (citing *McDonnell Douglas*, 411 U.S. at 802-04). The plaintiff's initial burden "is not onerous." *Patterson*, 491 U.S. at 186. Further, discrimination against a business based on the race of its owner violates section 1981. *See McClain v. Avis Rent A Car Sys., Inc.*, 648 F. App'x 218, 222 n.4 (3d Cir. 2016); *Gersman v. Group Health Ass'n, Inc.*, 931 F.2d 1565, 1567-70 (D.C. Cir. 1991), *vacated on other grounds*, 502 U.S. 1068, *reinstated*, 975 F.2d 886 (D.C. Cir. 1992). Nanko alleges that

Alcoa, aware of Diané's race, treated the company he owns and operates less favorably than similarly situated white-owned companies. *See, e.g.*, Prop. Second Am. Compl. ¶¶ 3, 17, 57-68. By alleging those basic elements of a *prima facie* case of intentional discrimination, Nanko raised its "right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Brown*, 774 F.3d at 1023 (plaintiff stated section 1981 claim where she "identified a similarly-situated employee who is not in her protected class and explained why she has equivalent qualifications"). The burden at the summary judgment stage and at trial is different and substantially more onerous than the pleading burden. Allegations regarding comparators, racial comments, and pretext obviously strengthen a discrimination complaint, but the evidentiary requirements the dissent identifies are inapplicable at the pleading stage.

We do not reach any of the other grounds, such as the applicability of a mandatory arbitration clause in the CBG Agreement, on which Alcoa moved to dismiss. The absence of a putative required party is not a jurisdictional question. *Ilan-Gat Eng'rs, Ltd.,* 659 F.2d at 240. The district court accordingly may decide to address those other grounds on remand before or in tandem with further consideration of the Rule 19 issue.

* * *

For the foregoing reasons, we reverse the district court's dismissal of the complaint and remand for further proceedings.

*So ordered.*

BROWN, *Circuit Judge*, dissenting: The Court finds the question whether the Foreign Sovereign Immunities Act ("FSIA") applies—and therefore whether jurisdictional discovery is necessary—was properly presented to the district court. Op. 8–9. Its opinion further holds the district court erred in deciding Nanko failed to state a claim upon which relief can be granted for violations of 28 U.S.C. §§ 1981 and 1985. Op. 10–11. I disagree on both points and respectfully dissent.

I.

The district court specifically noted, "Plaintiffs do not contest the assertion that Guinea is protected from suit by sovereign immunity." *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 181 n.6 (D.D.C. 2015) (citing Nanko's opposition to Alcoa's motion to dismiss). We, therefore, review Nanko's filings in the district court to determine whether the court abused its discretion in finding the argument forfeited. *See GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012). It did not.

Nanko's brief opposing the motion to dismiss contains two relevant statements:

- "Defendants claim that Guinea is an indispensable party and further allege that because Guinea is a foreign sovereign this Court lacks jurisdiction under the Foreign Soverign [sic] Immunities Act, unless a specified exception applies. This argument is a red herring and meritless. Contrary to Defendants' contention, there is no basis for Guinea involvement given the Technical Assistance Agreement . . . ," and
- "[w]hile Defendants may be correct in its [sic] view that this Court lacks jurisdiction over Guinea, Defendants miss two critical facts; as plead, the CBG and the TAA are valid legal contracts."

Nanko Opp'n to Alcoa Mot. to Dismiss at 24–25, *Nanko Shipping, USA v. Alcoa, Inc.*, No. 14-cv-1301 (D.D.C. Sept. 25, 2014), ECF No. 11.  These statements, read together and in succession, discuss whether Guinea was an indispensable party, mentioning the applicability of the FSIA only in passing.  Of course, reasonable minds may differ regarding the precise interpretation of these statements, *see* Op. 8, but the district court judge did not *abuse her discretion* in concluding the FSIA issue was not contested.  *See Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments.").

The majority points to Nanko's Motion for Reconsideration filed before the district court, Op. 8–9, which *does* appear to discuss the FSIA.  Nonetheless, "[Federal] Rule [of Civil Procedure] 59(e) motions are aimed at reconsideration, not initial consideration."  *GSS Grp.*, 680 F.3d at 812.  Accordingly, a "Rule 59(e) motion may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment."  11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2810.1, at 163–64 (3d ed. 2012).  Since Nanko could have raised its FSIA argument earlier, but chose not to do so, the argument is forfeited.  *See District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010).

## II.

The district court also properly dismissed Nanko's claims pursuant to 42 U.S.C. §§ 1981 and 1985 for failure to state a claim upon which relief could be granted.

I agree with the Court's starting premise:  "Nanko alleges that Alcoa, aware of Diané's race, treated the company he

owns and operates less favorably than similarly situated white-owned companies." Op. 10–11. Indeed, Nanko's complaint recounts multiple incidents, over a three-year period, when Alcoa failed to award bids to Nanko and awarded contracts to white-owned companies instead.

But, as the majority also notes, a Section 1981 claim cannot "reach[] more than *purposeful* discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 388, 391 (1982) (emphasis added). Accordingly, to plead a *prima facie* case, a plaintiff must show the defendant intended to discriminate against the plaintiff on the basis of race. *See Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

Nanko has failed to plead sufficient facts to carry that burden here. In fact, *no facts* presented in the complaint suggest Alcoa intentionally discriminated against Nanko on account of race. Rather, Nanko states it is an African-American owned company, *see* Prop. Second Am. Compl. ¶¶ 78–79, alleges Alcoa had done business with white-owned Klaveness, *id.* ¶¶ 17, 80, and asserts "[Alcoa] imposed certain unreasonable requirements, offered multiple limited shipping opportunities in 2012 after telling Nanko that all such bid opportunities had been contracted out and expressly stated that their decision making process would be arbitrary and subjective," *id.* ¶ 82. Further, Nanko claims it used the "same exact shipping companies" as Alcoa and also "attained equal or lower shipping prices and similar assurances regarding shipping security." *Id.* ¶ 87. Indeed, all of Nanko's factual allegations are consistent with an arbitrary, *but not racially discriminatory*, decision-making process. Everyone can be characterized by race, and many contracting parties are "harsh, unjust, and rude," but a failure to do business with a

4

particular African-American individual or company does not automatically constitute a federal civil rights claim. *See generally Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002).

The inadequacy of Nanko's pleading is hardly surprising. Intentional discrimination may be relatively easy to plead via comparator evidence—as Nanko apparently attempts to do—in the employment discrimination context, where a plaintiff is keenly aware of his coworkers' performance and familiar with his employers' policies. *See Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (pleading the underlying facts necessary to rely on comparator evidence in an employment case). In the commercial context, however, it is often very difficult to plead facts raising an inference of racially discriminatory intent. *See Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 429–31, 435 (4th Cir. 2006) (finding a viable § 1981 claim where an individual purchased a salon gift card for her mother, but the salon refused service to the mother, stating it did not "do black people's hair"). This difficulty is systemic, but it is not for this Court to remedy policy deficiencies: "Trying to make [the statute] a cure-all not only goes beyond any expression of congressional intent but would produce satellite § 1981 litigation of immense scope." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006).

Accordingly, I would affirm the district court's dismissal of Nanko's claims pursuant to 42 U.S.C. §§ 1981 and 1985 for failure to state a claim upon which relief can be granted. *See Nanko Shipping, USA v. Alcoa, Inc.*, 118 F. Supp. 3d 372, 377 (D.D.C. 2015); *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 833 (1983) (noting § 1985 "provides no substantial rights itself").